[Civ. No. 8057. First Appellate District, Division Two.—December 21, 1931.]

ESTELLE PORTER CHRISTIN, Respondent, v. CHARLES W. STORY, Appellant.

Clyde C. Shoemaker for Appellant.

Knight, Boland & Christin, Charles A. Christin, Arthur Dunn, Jr., and Horace S. Wilson for Respondent.

SPENCE, J.—Plaintiff brought this action to obtain possession of certain real property and to have all rights of the defendant under a contract of sale declared forfeited because of the failure of defendant to make the payments required by the contract. The cause was tried by the court sitting without a jury and from a judgment in favor of plaintiff, defendant appeals.

The contract between the parties dated June 8, 1927, provided for a purchase price of $100,000 payable on or before June 1, 1930, "together with interest on said sum of one hundred thousand dollars, or any unpaid portion thereof, at the rate of seven per centum per annum, payable semi-annually on December 1st and June 1st of each year". It further provided for the payment of all taxes by the purchaser. Time was made of the essence by the following clause: "It is especially agreed that time is of the essence of this agreement, and that if second party shall fail to pay any sum of money hereinbefore mentioned at the time agreed to be paid, then upon such failure to pay said sum, or at any time thereafter, first party shall have, at her option, the right to immediately enter into and take possession of said premises . . . , and first party shall thereafter occupy, possess, enjoy and be seized in fee of said property and every part thereof as of her original estate therein, anything herein to the contrary in anywise notwithstanding, and shall retain all moneys theretofore paid by second party . . . , and second party hereby waives all right to recover the same by law or otherwise."

During the year following June 8, 1927, defendant admittedly did not make the interest payments as agreed and admittedly did not pay either installment of taxes, but made only a partial payment of $1,000 on account of the $3,500 interest due on December 1, 1927, which partial payment was received and accepted by plaintiff on February 28, 1928. No further payment was made or tendered to plaintiff and after numerous communications between the parties, as hereinafter set forth, plaintiff commenced this action. At that time defendant was in arrears $6,000 in the payment of interest and about $3,200 on delinquent taxes.

Appellant does not question the propriety of the provisions of the contract making time of the essence and providing for forfeiture in the event of failure to make

the payments as agreed and it is now well settled that such provisions are valid. (*Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; *Odd Fellows' Sav. Bank* v. *Brander*, 124 Cal. 255 [56 Pac. 1109]; *Oursler* v. *Thacher*, 152 Cal. 739 [93 Pac. 1007]; *Skookum Oil Co.* v. *Thomas*, 162 Cal. 539 [123 Pac. 363]; *Schwerin Estate Realty Co.* v. *Slye*, 173 Cal. 170 [159 Pac. 420]; *Fresno Irr. Farms Co.* v. *Canupis*, 39 Cal. App. 184 [178 Pac. 300].) However, appellant contends that respondent by her conduct had waived her right to declare a forfeiture, citing *Stevinson* v. *Joy*, 164 Cal. 279 [128 Pac. 751]; *Boone* v. *Templeman*, 158 Cal. 290 [139 Am. St. Rep. 126, 110 Pac. 947], and similar cases. The trial court found against appellant on the issue of waiver and in our opinion these findings are amply sustained.

In support of appellant's contention that respondent had waived her right of forfeiture, our attention is called to the fact that respondent accepted the partial payment of $1,000 when the interest payment of $3,500 was over two months past due and to the further fact that the present contract followed a former similar contract between the parties for the purchase of the property dated February 17, 1922, and that overdue interest payments were frequently made by appellant and accepted by respondent under the former contract. Appellant claims that the conduct of respondent, evidenced by the acceptance of these overdue payments and the communications between the parties, was such as to constitute a waiver of respondent's right of forfeiture as a matter of law.

Assuming, without deciding, that the conduct of respondent under the former contract as well as the present contract may be considered in determining the issue of waiver, we will proceed to a consideration of the communications between the parties as shown by the evidence, eliminating therefrom irrelevant matter and the numerous letters of appellant endeavoring to excuse his delays on the ground that he had no available funds with which to make the payments.

The communications on behalf of respondent were handled by Mr. Charles A. Christin, who was at all times the attorney-in-fact of respondent. On February 17, 1927, he wrote to appellant accepting payment on account and saying,

"I must have at least half of the balance before the first of March, and the balance by March fifteenth." On March 29, 1927, he again wrote, "I must insist upon the balance now overdue being paid by the first of April. I shall also have to insist that the payment on June first be met. I cannot longer afford to carry you indefinitely on in this matter. You realize that we are not getting any principal, and if it be impossible for you to meet the interest payments, I cannot see much to be gained by prolonging the contract. Will you please give this matter immediate attention?" The principal sum on the original contract was to become due on June 1, 1927, but apparently respondent was willing to make the new contract upon payment of the interest. On May 31, 1927, Mr. Christin wrote to appellant as follows: "I received your letter. I am enclosing a new contract of sale with reference to a three-year contract of purchase of the land belonging to Mrs. Christin. By sending you this, I make no representation that your default will not be taken advantage of. In order to protect your position, you must send the interest now due, together with the enclosed document signed and acknowledged by you. Mrs. Christin will then execute and send to you a copy thereof. In the meantime, you are delaying at your peril." Appellant delayed the execution of the new contract and the payment of the balance of the last installment of interest due on the former contract until November, 1927. In the meantime a telegram had been sent to appellant on July 26, 1927, reading, "How long do you think I am going to wait?" Again on October 25, 1927, Mr. Christin had written making an appointment to meet appellant in Los Angeles the following Monday, saying in part, "There simply has to be some more definite arrangement about payments, and I shall determine upon what course to pursue on Monday." On December 2, 1927, following the failure of appellant to pay the interest installment due under the new contract on December 1st, Mr. Christin wrote, "Permit me also to advise you that your interest is now delinquent, and you will please remit." On December 8, 1927, a wire was sent, saying, "Must have interest payment at once." This was followed by a letter on December 13, reading as follows: "You realize, of course, that your failure to meet the interest payment entirely vitiates your rights under the contract of sale,

and I desire to advise you that by not immediately cancelling the contract, Mrs. Christin in no way waived her right to refuse any payments hereafter, or to cancel the contract at any time for the breach." As hereinbefore stated, appellant finally made a partial payment of $1,000 on February 28, 1928, which partial payment was accepted by respondent. On May 8, 1928, Mr. Christin wrote, "I presume you realize that the first of June there is another instalment of interest due, and that there will then be due Mrs. Christin $6000. I do not know what you think we use for money up this way, but the time has come when I simply cannot tolerate your delays. If you cannot meet these interest payments, I do not see how you can hope to continue. Unless you can pay the balance due and meet the next instalment within a reasonable time, I am going to turn the property over to my Los Angeles agent for disposal. I must have money." On Friday, June 8, 1928, Mr. Christin made a trip to Los Angeles and had a conference with appellant. At this conference Mr. Christin learned for the first time that appellant had failed to pay either of the last two installments of taxes. He told appellant, "This can go no further . . . those must be paid immediately. . . ." Upon his return to San Francisco, Mr. Christin sent the following letter on June 11th, "After talking with you on Friday, I have come to the fixed conclusion that something must be done with reference to putting your contract with Mrs. Christin in order. You are now in default of the sum of $6000 in interest, and the taxes have not been paid for the last two instalments. You will please consider this is final notice to you that all defaults, both the payment of interest and the payment of delinquent taxes, must be made by you on or before June 30th. Otherwise I shall have to ask you to turn possession of the premises over to me on July first." No response was made to this letter and on June 29th Mr. Christin wired appellant as follows, "You must pay up before Monday as set forth in my letter." Again on July 1st the following wire was sent, "Pursuant to my letter and wires you must pay delinquencies on or before Monday July 2 or your contract is forfeited and I will bring appropriate actions for Mrs. Christin's protection. This is final." No response being

made to these telegrams and no payment having been made, the complaint in this action was filed on July 21, 1928.

It may be conceded under the rule laid down in the authorities cited by appellant that respondent's conduct in accepting overdue payments and treating the contract as subsisting without insisting upon the right of forfeiture was such as to constitute a temporary waiver of the right to rely upon the strict terms of the contract relating to forfeiture. But such temporary waiver or temporary suspension of the right of forfeiture, as it has been termed, was neither absolute nor permanent and the right of forfeiture could be revived. The nature of such waiver was considered by the Supreme Court in denying hearing in *DeBairos* v. *Barlin*, 46 Cal. App. 665 [190 Pac. 188]. There the District Court of Appeal had said, "the vendors accepted overdue payments from time to time under the contracts, *and thus waived the provision that time was of the essence of the contracts*". Referring to this statement the Supreme Court said at page 674 of 46 Cal. App.: "The language we have italicized is not a correct statement of the law without further qualification. Acceptance of overdue installments of the price, on an executory contract for the sale of land, waives any right to declare a forfeiture on account of the previous failures to pay when due. But such acceptance alone does not change the terms of the contract as to forfeiture for future failures, nor eliminate the provision that time is of the essence of the contract. There may be conduct and acquiescence by the vendor sufficient to justify the inference by a court as a matter of fact that the vendor has waived the conditions of a contract regarding a forfeiture, which he afterward claims the right to enforce, and when in such a case the waiver had continued until after all installments are due, the condition cannot be revived except by notice to the vendee. (Citing cases.) *But none of these cases holds that such waiver is absolute, or that the provision cannot be revived and a forfeiture produced by a notice requiring performance within reasonable time.*" (Italics ours.)

Here the issue before the court was not whether there had previously been a temporary waiver or suspension of the right of forfeiture, but whether such temporary waiver or suspension continued to exist at the time respondent sought

to exercise the right of forfeiture. The fact that there may have been a prior temporary waiver would become immaterial if the right of respondent to enforce the provisions of the contract relating to forfeiture had been revived by notice requiring performance within a reasonable time. Apparently conceding this general proposition, appellant contends that he received no definite notice that forfeiture would be declared and that he was not given a reasonable time within which to comply with the demand made upon him. These contentions are without merit. On May 8, 1928, he received notice that unless payment was made "within a reasonable time" the property would be turned over to respondent's Los Angeles agent for disposal. After again defaulting on the interest payment due on June 1, 1928, and after respondent had learned on June 8th that the last two installments of taxes had not been paid, appellant was given "final notice" on June 11th that unless all defaults of interest and taxes were paid by June 30th, respondent would demand possession of the premises on July 1st. There is nothing indefinite or uncertain about the "final notice" contained in the letter of June 11th and the time given within which to comply with the demand was entirely reasonable, more particularly in the light of the warning given to plaintiff in the letter of May 8th demanding payment within a "reasonable time". ▇ Assuming that the right of forfeiture had been temporarily waived or suspended, it was effectively revived by the notice and demand contained in the letter of that date. In our opinion the further offer in the wire of July 1st to permit appellant to make the delinquent payments on or before Monday, July 2d, did not prejudice respondent's right to declare a forfeiture in the event that payment was not made on that day.

▇ Appellant further contends that even if there has been a forfeiture he should be relieved therefrom under the provisions of section 3275 of the Civil Code, which reads: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." This contention is suffi-

ciently answered by the fact that appellant has done nothing to entitle him to relief under that section. He has not made or offered to make "full compensation" to respondent. He had made neither a tender to respondent nor into court and has failed to plead or prove that he is ready, willing and able to make the payments due.  In this connection we may note that on November 15, 1928, being the last day of the trial and before the submission of the cause, respondent through her attorney offered in open court to dismiss the action upon payment of the delinquent interest and taxes and further introduced testimony to show that a similar offer had previously been made to appellant during the pendency of the action. Neither offer was met by any payment or tender, but in response to the offer made at the trial, counsel for appellant merely insisted that the offer of respondent to accept the delinquent payment "recognized the existence of the contract" and "is consistent with our defense and tends to show a waiver more than the evidence in the record". As above stated, the' right of forfeiture, if temporarily waived at any time, had been effectively revived and exercised by respondent and she is to be commended and not penalized by her further offers of indulgence during the pendency of the action. Appellant cites no authority holding that he is entitled under the circumstances to relief under such section 3275 of the Civil Code and we are satisfied that he is not entitled thereto. The provisions of that section are equitable in their nature and he who seeks their benefits must at least show that he is ready, willing and able to do all that should reasonably be required of him under the circumstances. Appellant made no such showing.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.